IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOP-CO CEMENTING PRODUCTS, INC., | § | |
| | § | |
| Plaintiff, | § | Case No. 4:16-cv-342 |
| v. | § | |
| | § | |
| HOUSTON CASING SPECIALTIES, LLC, | § | JURY TRIAL REQUESTED |
| RUSSELL KNIGHT, AND EDUARDO | § | |
| ANTUNANO, | § | |
| | § | |
| Defendants. | § | |

### TOP-CO CEMENTING PRODUCTS, INC.'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER

Comes now, Plaintiff Top-Co Cementing Products, Inc. and complains against defendants as follows. Plaintiff also moves, pursuant to Fed. R. Civ. P. 65, for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction enjoining the use of all images and text copied from Top-Co's materials and excerpted in this Complaint.

### I.   PARTIES

1.      Plaintiff Top-Co Cementing Products, Inc. ("Top-Co") is a domestic for-profit company. It acquired through merger all the interests of CaseTech International, Inc. ("CaseTech") in 2012, which had previously acquired all interests of Centra Tech LLC ("Centra Tech") through merger in 2011. These three entities collectively are at-times referred to herein as the Plaintiff to indicate facts or conclusions common to all three.

2.      Defendant Houston Casing Specialties, LLC ("Houston Casing") is a limited liability company organized under the laws of the State of Texas. Houston Casing's principal place of business is at 195 Southbelt Industrial Dr., Houston, Texas 77047. Houston Casing may be

served on its registered agent A Coy Reece at 18916 Harborside Boulevard, Montgomery, Montgomery County, Texas 77356.

3.      Defendant Russell Knight is an individual who, upon information and belief, resides in Harris County, Texas.  He can be served with summons at Houston Casing's principal place of business, 195 Southbelt Industrial Drive, Houston, Texas 77047.

4.      Defendant Eduardo Antunano is an individual who, upon information and belief, resides in Harris County, Texas.  He can be served with summons at Houston Casing's principal place of business, 195 Southbelt Industrial Drive, Houston, Texas 77047.

## II.      JURISDICTION AND VENUE

5.      This action is brought under the Copyright Act of the United States, 17 U.S.C. §§ 501 *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and under the laws of the State of Texas.  The state law claims herein are substantial and related to the claims arising under Federal Law.

6.      This action is brought and subject matter jurisdiction lies within this Court pursuant to 28 U.S.C. §§ 1331, 1338.  This Court has federal-question jurisdiction over this matter because Top-Co seeks damages against the defendants, jointly and severally, under the United States Copyright Act of 1976, 17 U.S.C. §§ 501 *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and principles of pendent, supplemental and/or ancillary jurisdiction.

7.      Venue in this action is proper in the Southern District of Texas because Defendants are each physically located in the Southern District of Texas, and because the facts and circumstances that give rise to this cause of action took place in the Southern District of Texas.  Venue in this judicial district is proper under 28 U.S.C. § 1391.

### III.    FACTS

8.    Top-Co is a company that offers a full line of casing and cementing products to allow oil and gas developers to develop underground petroleum reservoirs.  It is a growing company, expanding its product lines both through innovation and acquisition.

9.    Houston Casing was formed by former Top-Co employees, operates out of a former Plaintiff facility, offers Plaintiff's product lines, wrongfully uses Plaintiff's marketing materials, displays Plaintiff's manufacturing processes falsely claiming they are its own, falsely claims the products are API-certified under Plaintiff's API number, wrongfully utilizes Plaintiff's trade secrets, and violates Plaintiff's copyrights while assuring Plaintiff it has performed none of those actions.

10.    Houston Casing was organized in February 2014.  Two of its original four members are Mr. Russell Knight and Mr. Eduardo Antunano.  Houston Casing is a direct competitor of Plaintiff.

11.    Mr. Knight and Mr. Antunano are former CaseTech and/or Top-Co employees.  As employees, Mr. Knight and Mr. Antunano were subject to Employment Agreements that prevented their misappropriation of confidential and proprietary information when employed by future employers.  Mr. Knight and Mr. Antunano were subject to common law and statutory obligations barring their misappropriation of the same.  In 2014, after Mr. Knight and Mr. Antunano formed Houston Casing, Top-Co reminded them of their obligations with respect to confidential, unique, and proprietary information.  By letter of August 14, 2014, Mr. Knight and Mr. Antunano denied that they were in violation of any of their duties and threatened suit, claiming that investigation into whether the employees were utilizing confidential and/or proprietary information constituted harassment.

12.     Plaintiff develops and has developed advertising and marketing programs that include marketing material and its use in manners that increase the likelihood of sales.  These materials are proprietary and valuable to the companies because they effectively position the goods in the marketplace, guide potential customers to the products that fit the customers' needs, indicate complimentary products that could be sold along with the product initially sought, and position the seller as a provider of reliable and varied products for future projects.  Certain marketing materials are not widely distributed, instead being targeted and given only to potential customers. Top-Co does not make its sales material from earlier products readily available.  Plaintiff's marketing programs are trade secrets.  Plaintiff's marketing materials are subject to common law and statutory copyright protection.  Plaintiff filed for registered copyright protection for the materials at issue in this proceeding prior to the date of service of this suit with the latest first-publication being 2011.

13.     Plaintiff develops and has developed manufacturing, assembly, quality control, and other business practices to ensure the highest quality of its goods.  The manufacturing, assembly, quality control, and other business practices of Plaintiff are not generally known and are trade secrets.

14.     Through Knight and Antunano's employment with Top-Co and/or CaseTech, the two became familiar with the trade secrets of the Plaintiff, including advertising and marketing programs, and manufacturing, assembly, quality control, and other business practices.

15.     Top-Co also has a limited number of U.S. distributors of its products.  Its U.S. Distributors are Crown Supply Company, McJunkin Redman Corp., Stickman, Inc., Reliable Field Services, Scepter Supply, Tek Star Oilfield & Industrial Supplies, and Rocky Mountain

Oilfield.  At times, Top-Co will utilize other companies as ad hoc distributor of products. Houston Casing is not a distributor of Top-Co products.

16.    Houston Casing maintains a website at www.h-c-s.us.  Houston Casing promotes and markets its material through this website.  Houston Casing advertises Mr. Knight to be its Operations Director.

17.    Houston Casing takes images from Top-Co and/or CaseTech, uses them as its own, and advertises sales as if it were selling CaseTech's products.  On the left are the photographs, originally taken by CaseTech of products made and sold by CaseTech.  Each of the photographs on the left are owned by Top-Co and entitled to copyright protection.  On the right are excerpts from Houston Casing's website.[1]  As shown on Exhibit A and excerpted below:

 

**Fig. 1: CaseTech image**

**Fig. 2: image used by Houston Casing**

---

[1]    Each Houston Casing image shown herein was retrieved from Houston Casing's website at least as late as February 1, 2016.

18.     At times, Houston Casing manipulates the photos taken from CaseTech to delete the CaseTech logo, obscuring the origin and make of the product.  This intentionally destroys the trademark to give the false impression that the product shown is associated with Houston Casing instead of Top-Co and/or CaseTech.  As shown in attached Exhibit A.



**Fig. 3: CaseTech image**



**Fig. 4: Houston Casing image, showing deleted CaseTech logo**

19.     As can be seen above, Houston Casing has taken the CaseTech image and altered it to remove the CaseTech source.

20.     Houston Casing has used other CaseTech images to promote its products, including those in the following paragraphs.  As the images demonstrate, often Houston Casing will slightly alter the image by adding a border or cropping the image.  In each case, the corresponding CaseTech image is shown on the left and the Houston Casing image is shown on the right.

21.     Each image in the right column below is an excerpt from Houston Casing's website.



**Fig. 5: CaseTech image**



**Fig. 6: image used by Houston Casing**



**Fig. 7: CaseTech image**



**Fig. 8: image used by Houston Casing**



**Fig. 9: CaseTech image**



**Fig. 10: image used by Houston Casing**



**Fig. 11: CaseTech image**



**Fig. 12: image used by Houston Casing**



**Fig. 13: CaseTech image**



**Fig. 14: image used by Houston Casing**



**Fig. 15: CaseTech image**



**Fig. 16: image used by Houston Casing**

22.     Top-Co is the owner of all copyrights to each of the images.

23.     Houston Casing's use of the images is unauthorized.

24.     Houston casing has taken product descriptions created by CaseTech, copied them, and used them without permission. For example, Figure 17 demonstrates that CaseTech marketed its Hinged Turbolator with four bulleted points that described the Turbolator's features. Figure 18 demonstrates that Houston Casing took both the CaseTech Turbolator image and the exact Casetech marketing language contained in the four bulleted points.  Top-Co is the owner of all copyright in the marketing materials describing its products, including the above.  Houston Casing violates the copyrights of Top-Co by using the same language associated with the same figure as used by Top-Co. As shown in Exhibit A excerpted below:

- Hinged turbolator solid body centralizer with either spiral or straight vanes
- Available with or without set screws
- Designed for use on upset pipe to allow for ease of installation
- Hinge nails have gnurling to keep from the possibility of backing out down hole



**Fig. 17: CaseTech's marketing literature**



**Fig. 18: Houston Casing use of CaseTech's marketing language**

25.    Additional copyright violations include the text in the following paragraph used by Houston Casing to market their material, taken verbatim from Top-Co-owned and protected marketing materials.

26.    Each of the following is an excerpt from Houston Casing's website and included in Exhibit A.

**Welded Bow Spring Centralizers**

Welded bow-spring centralizers are available in two styles: slip-on and hinged. Slip-on centralizers are manufactured with solid end rings, requiring the centralizer to be slipped on the casing OD during installation, normally one end will have set screws to eliminate the need for a stop ring or limit clamp. Hinged centralizers are manufactured in segments, allowing the centralizer to be installed easily around the casing OD. Hinge pins hold the segments together during installation. The collar design on the hinged bows allows for protection of the welded area to prevent the bow from tearing away from the collar if the casing must come back out of the hole.

Fig. 19: Houston Casing website excerpt on welded bow spring centralizers

**Dual Contact Welded Bow Centralizer**

The dual-contact (double bow) welded centralizer is designed for small-clearance casing-to-hole size applications. The centralizer will perform as a standard bow centralizer in holes up to 1/2" smaller than the centralizer's nominal OD. When run in holes less than 1/2" smaller than the OD, the center of the centralizer contacts the casing OD, performing as a rigid centralizer. Because of its high restoring force with very little spring deflection, the dual-contact centralizer is excellent for deviated and horizontal wellbores. The dual-contact centralizer should only be installed between a collar and stop ring -- never over a casing collar.



Fig. 20: Houston Casing website excerpt on dual contact centralizers

**Non-welded Bow Spring Centralizer**
Non-welded bow-spring centralizers are available in the hinged style only. The bow springs of this centralizer are attached to the end rings without welding. The centralizer bow end is connected to the end rings with a locking tab that bears the load force on the centralizer. The centralizers are supplied in hinged segments joined by hinge pins in each segment.

**Fig. 21: Houston Casing website excerpt on non-welded centralizers**

**Welded Turbo-fin Bow Spring Centralizer**
The Welded Turbo-fin Bow Spring is a centralizer with turbolating fins added to the bow springs. The turbo-fins may be ordered in both right and left hand versions to assist in the uniform displacement of the cement. Also available with the dual contact bowspring for a semi-rigid centralizer with the turbolating fins for proper cement displacement and swirl.

**Fig. 22: Houston Casing website excerpt on welded turbo-fin centralizers**

**Liner Centralizer**
A Liner Centralizer uses a solid end band that is installed by sliding the centralizer onto the casing. It provides for minimal annular obstruction in close tolerance holes. Used primarily in liner completions, this liner centralizer can be supplied with integral set screws in the lower collar or can be installed over a liner stop collar. Liner centralizers are also available where additional turbulence is desired during circulation and cementing.

**Fig. 23: Houston Casing website excerpt on liner centralizers**

Houston Casing Specialties has the most comprehensive solid body centralizer line in the industry. Products can be provided polymer coated or Ceram-Kote 54 coated if downhole requirements dictate.

Set-Screws can be provided in carbon or stainless materials.

Solid body centralizers have the added benefits of reducing drag and no starting force, to facilitate getting the casing to the bottom.

Fixed height. The centralizer will yield a specific amount of standoff at its location.

Centralizer bodies are made with ID larger than OD of casing while taking into account API tolerances for casing sizes.

Rotating and/or reciprocating the casing have no problem with a rigid centralizer.

**Fig. 24 Houston Casing website excerpt on solid centralizers**

**Rounded and Solid Straight Vane Centralizers**

Available with rounded hollow vane or solid vane made from plate. Solid vanes available in standard or full radius style.

Allows for little running resistance when going downhole.

Vane quantity and height vary depending on vane size and are customizable by request.

Available with set screws for Non-rotating or Solid designation

**Fig. 25 Houston Casing website excerpt on rounded and solid straight vane centralizers**

Available with rounded hollow vane or solid vane made from plate. Solid vanes available in standard or full radius style.

Spiral vane design allows for optimum cement flow and swirl downhole.

Vane quantity and height vary depending on vane size and are customizable by request.

Available with set screws for Non-rotating or Solid designation

**Fig. 26 Houston Casing website excerpt on solid vane centralizers**



**Right and Left Hand Turbolator Straight Vane Turbolator**
Available with spiral vanes in left or right hand patterns or with straight vanes.

4-1/2" tall centralizer

Available with or without set screws depending on if it is a rotating or non-rotating application

**Fig. 27 Houston Casing website excerpt on turbolators**



**Reamer Float Shoes**
Available with 5,000 psi or 10,000 psi valve.

Spiral Carbide for cleaning out hole and centralization.

Great method to get through bridges, ledges, and difficult downhole situation.

Available with API and Premium connections.

Available in all sizes from 4-1/2" to 13-3/8"

Down jet nose for optimal cement flow.

**Fig. 28 Houston Casing website excerpt on reamer float shoes**



**Fig. 29 Houston Casing website excerpt on downjet aluminum reamer nose**



**Fig. 30 Houston Casing website excerpt on reamer float shoes**

27.    Top-Co owns the copyright to each of the above excerpted texts.  Each of the excerpted texts originated as marketing material for Plaintiff's products.

28.    Houston Casing's use of the text is unauthorized.

29.    Houston Casing has taken photographs of CaseTech employees and facilities and in doing so represented that they are part of Houston Casing's operations.  These photos show the manufacturing process and equipment used in guaranteeing consistent quality products.  Like the marketing images, often Houston Casing slightly alters the images by adding a border or cropping the images.

30.     Each image in the right column below is an excerpt from Houston Casing's website.



**Fig. 31: CaseTech image**



**Fig. 32: Houston Casing image**



**Fig. 33: CaseTech image**



**Fig. 34: Houston Casing image**



**Fig. 35: CaseTech image**



**Fig. 36: Houston Casing image**

31.     Houston Casing's use of the images above was not authorized.

32.     Houston Casing does not utilize the devices shown in the figures above.  For instance, the robotic arm in Figure 33 is used for exact placement of bow springs on a centralizer, and is property of Top-Co, not Houston Casing.

33.     Upon information and belief, including through use of images that show Plaintiff's manufacturing techniques, Houston Casing uses Plaintiff's proprietary and confidential manufacturing, assembly, quality control, and other business practices.

34.     Upon information and belief, Houston Casing also shows CaseTech employees working at the machines on Houston Casing's website, as shown below.

35.     Figure 37 shows a CaseTech employee working at a CaseTech work station.  Figure 38 shows that same employee at the same work station.  Neither the employee or the work station are part of Houston Casing's operation.



**Fig. 37: CaseTech employee**



**Fig. 38: image used by Houston Casing**

36.     The American Petroleum Institute issues API Certificates for companies that demonstrate consistency in product quality.   The certifications are highly sought because they increase the marketability of the company holding the certification, increase sales of products bearing the API Monogram, and help ensure uniformity of products throughout the industry.   As the API Monogram Licensing Program Requirements states, displaying the API monogram (touting API certification) implies that the party has gone through a rigorous program requiring (1) on-site audits of facilities, (2) a demonstration of ability to meet stringent manufacturing requirements, (3) the maintenance and following of controls designed to ensure ongoing product quality, and (4) passing the API Conformity Matrix:

> To obtain and retain an API Monogram license, an Organization must have a documented and functioning quality management system in place that meets both the requirements of API Spec Q1® (Quality Programs for the Petroleum, Petrochemical and Natural Gas Industry), and at least one of the applicable API Product Specifications. 3. Issuance of the license(s) is dependent upon a successful evaluation of the Organization's quality manual, API Spec Q1 Conformity Matrix and satisfactorily passing an on-site audit of the Organization's facility and processes by API through its designated auditors. Site audits are required to verify demonstrated capability of the Organization to meet program requirements. Associated audit expenses will be paid by the facility.[2]

The application costs thousands of dollars, depending on the number of certifications sought. The API numbers are unique to the company that applied for, demonstrated worthiness for, paid for, and was awarded them.

37.     Houston Casing repeatedly advertises and displays a number that mimics a CaseTech API Certificate: 10D-0032.   Houston Casing claims a wide range of its products fall under the number mimicking Casetech's 10D-0032 Certificate, including a claim that its "standard slip-on and hinged bow spring centralizers, dual contact bow spring centralizers, turbo-fin bowspring

---

[2]     Available at http://www.api.org/~/media/Files/Certification/Monogram-APIQR/API_MonogramLicensingReqs_Rev6_FM-002.pdf

and liner centralizers" are certified by the API as compliant with API Spec 10D, the API specification for centralizers:



**New Product Line Added**

**February, 2015**
With the acquisition of a walking beam furnace, tempering oven and bow press, Houston Casing Specialties is proud to announce the availability of a complete line of **Bow Spring Centralizers**. The heat treated bows meet API 10D certification standards under Certificate #10-0032. New products includes standard slip-on and hinged bow spring centralizers, dual contact bow spring centralizers, turbo-fin bowsprings and liner centralizers.

Contact us today for more information.

**Fig. 39: Houston Casing's 'new product line' under a number mimicking CaseTech's API number**

38.    Upon information and belief, Houston Casing does not have any API certifications for API Spec 10D.  The American Petroleum Institute maintains a composite list of all entities that have API certifications.  Houston Casing is not listed among those entities for any API Specification.  Exhibit B.  Upon information and belief, Houston Casing's advertised API Certification 10-0032 is not a genuine API Certification.  Exhibit C.

39.    Houston Casing claims that it "manufactures" products with this API number.  As shown on Houston Casing's website, attached as Exhibit A and excerpted below:



HCI manufactures these products to the highest standards. These processes, and thorough testing guarantee consistent quality and uniformity. Bow spring products are manufactured to API 10D certification standards under Certificate #10-0032.

**Fig. 40: Houston Casing mimicking a CaseTech API number**

40.    It consistently claims that it "manufactures" each of the products that were CaseTech's product lines.

## IV.     CAUSES OF ACTION

### a.      UNFAIR COMPETITION

41.     Plaintiff incorporates each of the above paragraphs in their entirety.

42.     Houston Casing is liable for unfair competition, including passing off, palming off, reverse passing off under the Lanham Act, 15 U.S.C. § 1125.

43.     Houston Casing has passed off its goods as the goods of Top-Co.  Houston Casing includes photographs that display Top-Co products and description of products authored by Top-Co.  At times the photographs have been altered to erase the labels bearing CaseTech or otherwise make them appear slightly different from Top-Co materials.

44.     Houston Casing utilizes a number intended to mimic CaseTech's API Certification number to promote its products.  Houston Casing's advertised API number is not genuine.

45.     Houston Casing makes multiple false or misleading representations of fact and/or false designations of origin in connection with its products.  Houston Casing falsely represents that it manufactures products actually manufactured by Top-Co.  Houston Casing falsely represents that its products are manufactured with Top-Co equipment and methods.  Houston Casing falsely represents that it sells products sold by Top-Co.  Houston Casing falsely represents that CaseTech products are not in-fact CaseTech products by deleting the CaseTech emblem from the images.  Houston Casing represents its products are associated with Top-Co by using CaseTech's API number.  Houston Casing represents that its products are of a quality implicit in the API certification.

46.     Houston Casing's actions are willful and in bad faith.

### b.      FALSE ADVERTISING

47.     Plaintiff incorporates each of the above paragraphs in their entirety.

48.     Houston Casing is liable for false advertising under the Lanham Act, 15 U.S.C. § 1125.

49.     Houston Casing makes a number of false and/or misleading statements with respect to the products at issue which would deceive buyers.   Houston Casing claims to own an API Certification for Specification 10D.   Houston Casing claims that its products are API certified. Houston Casing claims that its products are API certified under a CaseTech API certification number.   Houston Casing claims its products meet the rigorous quality standards of API-certified products.   Houston Casing represents its products are made with CaseTech equipment.   Houston Casing represents its products are made by CaseTech employees.

50.     Houston Casing places the products in interstate commerce.

51.     Plaintiff, a direct competitor of Houston Casing, is injured by the Houston Casing's false representations.

### c.        COPYRIGHT INFRINGEMENT

52.     Plaintiff incorporates each of the above paragraphs in their entirety.

53.     The acts of Defendants complained herein constitute infringement of Plaintiff's registered copyright in violation of 17 U.S.C. § 501(a).

54.     Defendants engaged in willful acts that infringed the copyright.   Defendants knew that those acts infringed the copyright, represented that they were not taking Top-Co's intellectual property, and threatened action when Top-Co inquired about their misuse of its intellectual property.

### d.        VIOLATION OF TEXAS TRADE SECRETS ACT

55.     Plaintiff incorporates each of the above paragraphs in their entirety.

56.     Houston Casing is liable for misappropriation of trade secrets under the Texas Trade Secrets Act, Tex. Civ. Prac. & Rem. §§ 134A.001 *et seq.*

57.     The facts described above constitute violation of the Texas Trade Secrets Act.  The advertising program is a trade secret of Top-Co.  The manufacturing, assembly, quality control, and other business practices are trade secrets of Top-Co.

58.     Houston Casing's acts described herein were willful and malicious.

### e.     ADVERTISING INJURY THROUGH MISAPPROPRIATION OF ADVERTISING IDEAS

59.     Plaintiff incorporates each of the above paragraphs in their entirety.

60.     Houston Casing has advertised its products in the same manner as Top-Co, misappropriating the advertising ideas of Top-Co.

61.     Houston Casing has used Top-Co's text, images, and color scheme to promote similar products it manufactures to compete with Top-Co products.  The text and images were copied directly from Top-Co's materials.

62.     Top-Co has been damaged by this action.

### f.     BREACH OF CONTRACT

63.     Mr. Knight and Mr. Antunano had valid Employment Agreements with Top-Co.

64.     They breached those contracts by sharing and/or using confidential and/or proprietary information with Houston Casing.

65.     Plaintiff has been damaged.

### g.     TORTIOUS INTERFERENCE WITH CONTRACT

66.     Plaintiff incorporates the above paragraphs in their entirety.

67.     The Employment Agreements between Top-Co and Messrs. Knight and Antunano barred them from delivering proprietary information to Houston Casing.  They were reminded of this obligation after their termination of employment.  Houston Casing employed Mr. Knight and Mr.

Antunano, willfully and intentionally receiving proprietary information from Mr. Knight and/or Mr. Antunano.  Houston Casing used this information to Houston Casing's benefit.

68.     The knowledge and acts of Mr. Knight and Mr. Antunano are imputed on Houston Casing.  The employees are members of Houston Casing.  Mr. Knight's knowledge and Mr. Antunano's knowledge is Houston Casing's knowledge

69.     Top-Co has been damaged by this act.

### h.     VICARIOUS LIABILITY

70.     Each of the Defendants is jointly and severally liable for each of the causes of action.

71.     Houston Casing is liable via respondeat superior for the acts of its members and employees Mr. Knight and Mr. Antunano.

## V.     APPLICATION FOR TEMPORARY RESTRAINING ORDER

72.     The attached affidavit of Alfredo Sanchez is made in support of Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction.  *See* Exhibit D.

73.     The Plaintiff would be irreparably harmed without injunctive relief.  Houston Casing's use of Top-Co's intellectual property, including its copyrighted materials to promote its own products, is repeated, pervasive, willful, and egregious.  Each of the CaseTech/Top-Co images displayed above, as well as the marketing text, was used before the existence of Houston Casing, and represents products, equipment, and employees that were unique to CaseTech and Top-Co. Thus, it cannot be contended that Houston Casing is the originator of any of the images or text cited in the paragraphs above.  Because of the Defendants' unauthorized copying of Plaintiff's original work, Defendants have interfered with Plaintiff's exclusive rights to reproduce the copyrighted work, to distribute this work, and to publicly perform and display the work. Defendants' infringing activity has caused Plaintiff substantial damage as Defendants have

made, and continue to make, substantial sales through the exploitation of their infringing works. Moreover, the use injures Plaintiff's reputation and costs sales as detailed in the affidavit of Mr. Sanchez.  Top-Co works hard to establish itself as a trusted, cutting-edge, and reliable provider of goods in an intensely competitive market.  Houston Casing uses Top-Co's materials in a manner that ties the image and descriptions to an unreliable, unestablished, and inferior company.

74.     The balance of harm favors Top-Co.  Defendants could use their own images to promote their own products.  Defendants could use their own language to promote their own products. The primary requirement of Defendants because of a temporary restraining order would be simply that Defendants must produce their own materials for promoting their products.

75.     There is a substantial likelihood of success on the merits.  The elements of a cause of action for copyright are ownership of a valid copyright and copying of constituent elements. Top-Co is the owner of all copyrights.  The original works were created by CaseTech.  Top-Co acquired those assets through merger.  CaseTech and Top-Co both operate out of Houston, Texas, giving national points of attachment.  The copying is self-evident in each of the figures and text included above.  Houston Casing, a competitor, does not have authorization to use Top-Co's works.

76.     The public interest favors the injunction.  An injunction will ensure that no confusion arises as to any affiliation between Top-Co and Houston Casing.  There can be no public benefit to Houston Casing falsely representing that it uses equipment that it does not possess and that it holds an API 10-0032 certification, and thus an injunction would put an end to Houston Casing's false representations to the public.

## VI.  JURY DEMAND

77.  Top-Co demands a jury trial on all matters so triable.

## VII.  CONDITIONS PRECEDENT TO SUIT AND RECOVERY

78.  All conditions precedent have been performed or have occurred.

## VIII.  RELIEF REQUESTED

79.  Top-Co demands injunctive relief, including a temporary restraining order, preliminary injunction, and permanent injunction, barring

> a.  All Defendants' use of Top-Co's intellectual property, including any and all materials protected by copyright and trade secret;
>
> b.  All Defendants from representing Houston Casing products as Top-Co's;
>
> c.  All Defendants from representing Top-Co's products as Houston Casing's;
>
> d.  All Defendants from representing any and all CaseTech and/or Top-Co API Certification Numbers as Houston Casing's;
>
> e.  All Defendants from representing that its products are API Certified;

80.  Top-Co is entitled to Defendant's profits, damages sustained by Top-Co, and costs of suit.

81.  Top-Co is entitled to the unjust enrichment caused by the misappropriation.

82.  Top-Co is entitled to actual losses caused by the misappropriation.

83.  Top-Co is entitled to treble damages.

84.  Top-Co is entitled to attorney's fees for the present causes of action.  *See, e.g.*, Tex. Civ. Prac. & Rem. § 134A.005; 15 U.S.C. § 1117; Tex. Civ. Prac. & Rem. § 38.001.

Respectfully submitted,

February 9, 2016.

/s/ Steven P. Tepera
Steven P. Tepera, Attorney-in-Charge
Texas State Bar No. 24053510
Southern District Bar No. 1447190

REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel. (512) 474-2449
Fax (512) 474-2622

stepera@reedscardino.com

ATTORNEY FOR PLAINTIFF